IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF KANSAS


JERRY L. PENNER,

                Plaintiff,
        vs.                              **Case No. 09-4108-RDR**

CITY OF TOPEKA,

                Defendant.


                         **MEMORANDUM AND ORDER**

    Plaintiff has brought the above-captioned case alleging a violation of 42 U.S.C. § 1983 by defendant's denial of a provisional use request for a salvage yard license. This case is now before the court upon defendant's summary judgment motion.

I.  SUMMARY JUDGMENT STANDARDS

    Summary judgment is proper if it is demonstrated that the movant is entitled to judgment as a matter of law on the basis of facts to which there is no genuine dispute. The court must determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." Id. at 248. There are no genuine issues for trial if the record taken as a whole would not

persuade a rational trier of fact to find for the nonmoving party. <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court may not act as the jury and determine witness credibility when it examines the record upon a summary judgment motion. <u>Windon Third Oil and Gas v. Federal Deposit Ins.</u>, 805 F.2d 342, 346 (10th Cir. 1986) <u>cert. denied</u>, 480 U.S. 947 (1987). The evidence and all reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. <u>Spaulding v. United Transp. Union</u>, 279 F.3d 901, 904 (10th Cir.) <u>cert. denied</u>, 537 U.S. 816 (2002).

II. UNCONTROVERTED FACTS

Plaintiff has applied multiple times to the Topeka City Council for permission to operate a salvage yard at 417 S.E. 13th St. in Topeka, Kansas. In January 2003, he obtained a salvage yard license from defendant which was revoked in March 2003. He then applied for a provisional use permit to conduct vehicle salvage on the property. This was denied in March 2003 and a request for reconsideration was denied in May 2003. Plaintiff then filed another application for a salvage yard license. This was denied in September 2003 by the city council. The Shawnee County District Court overturned the denial, but the Kansas Court of Appeals, on August 19, 2005, overturned the state district court and upheld the city council's decision to deny the license.

Applications for a permit to operate a salvage yard are made

through the city fire department. The city fire chief makes an inspection of the location, verifies whether the land is zoned appropriately, and reports whether the proposed salvage yard will result in a public health or safety hazard.

On January 5, 2006, plaintiff filed another application to operate a salvage yard at the same location. This was denied by the city council on March 21, 2006. The state district court upheld the denial on November 17, 2006. The court made the following comments:

> From a review of the record, it is apparent that the Topeka City Council relied heavily upon the report prepared by the Planning Department. The Planning Department's report set forth several concerns, including "increased truck traffic through the neighborhood" which "could have a negative impact on the [Williams] magnet school, as well as the viability of the Brown v. Board of Education site." The Planning Department found in its report that "[w]ith so many children and visitors coming to the area, safety is also a concern." In addition, the Planning Department report noted that the "property does not comply with the City's Subdivision Regulations." Based on these concerns, the Planning Department report recommended: "Disapproval-due to illegal subdivision and impact upon the neighborhood."
>
> In the decision of the Kansas Court of Appeals in the previous *Penner* case, it was found that the historical sites and magnet school located in the Monroe Neighborhood "were sufficiently nearby the proposed [savage yard site] such that their compatibility . . . was an appropriate consideration for the Council." (Appellate Case No. 93,111 at p. 13). Moreover, the Kansas Court of Appeals found that "the Council appropriately considered concerns regarding increased truck traffic to the neighborhood" and that such concerns, especially in school areas, are reasonably related to safety concerns, and came within the Council's broad obligation to consider 'applicable safety provisions.'" (Id. at p. 14.) Thus, although the "New

> Application" filed on January 5, 2006, requires
> independent consideration, the Court finds the decision
> of the Kansas Court of Appeals in the previous *Penner*
> case to be persuasive regarding the types of matters
> which the Topeka City Council could appropriately
> consider.
>     The record in this case reveals that after
> completing its review of the "New Application," the
> Planning Department continued to have safety concerns as
> well as concerns regarding the compatibility of the
> salvage yard with nearby properties. Moreover, the
> record reveals substantial evidence in the record to
> support the City Council's decision. In addition to the
> information submitted by the City of Topeka's
> professional staff, the "New Application" stated on its
> face that the salvage yard would store "salvage vehicles
> and used parts" and that "small parts [would be] removed
> by customer, [while] major parts by yards. Dismantled
> vehicles loaded on trailer with fork lift and taken to
> recycler." Thus, the Court finds that it was reasonable
> for the Topeka City Council to have found that such an
> operation raised legitimate safety concerns in one of the
> most unique neighborhoods in the State of Kansas.

On February 22, 2008, plaintiff filed another application. This was denied by the city council on July 1, 2008.

The property in question is zoned for heavy industrial use. This is compatible for use as a salvage yard. Plaintiff obtained the approval of the fire department to operate a salvage yard on the property. But, the Kansas Court of Appeals has held that the city code, T.C.C. § 48-21.02(b)(2)(s), requires the further approval of the city's governing body for provisional use to operate a salvage yard business that does wrecking or dismantling of vehicles. Penner v. City of Topeka, 117 P.3d 907, 2005 WL 2001742 at *3-4 (Kan.App. 8/19/05).

The city planning department recommended disapproval of

4

plaintiff's 2008 application based upon compatibility with the surrounding neighborhood, which has been called the "Monroe neighborhood." Deposition of David Thurbon at p. 62, Doc. No. 35, Ex. 4. The planning department does not approve provisional use applications and it has no authority to revoke a license. It only makes recommendations to the city council. The director of the planning department testified that plaintiff's application for a salvage yard would have only moderate impacts on the surrounding existing and potential uses.

There are no current formal land use plans or revitalization strategies for the Monroe neighborhood. A proposed plan in 2003 was never approved. A planned recreation trail adjacent to plaintiff's property has not been completed. A materials recycling facility was established adjacent to plaintiff's property in 2007. Other salvage yards dismantle automobiles in the neighborhood of plaintiff's property. A concentration of salvage yards in one area will tend to discourage any other type of development investment in the area. A concentration of salvage yards will attract more salvage yards and increase the impact on the community.

Concentration is a qualitative assessment which considers the size of existing salvage yards, the potential reuse of other salvage yards and whether there are other appropriate uses for the site. Concentration is discouraged unless it is sufficiently isolated from residential neighbors and other sensitive land uses.

5

III. PLAINTIFF'S CLAIMS

Plaintiff argues that he was denied his constitutional rights to procedural and substantive due process and the equal protection of the laws by defendant's denial of the provisional use permit. We note, prior to discussing these claims, that the Tenth Circuit has said repeatedly that federal courts should be reluctant to interfere with the construction of local law in land use regulation disputes. Nichols v. Board of County Commissioners, 506 F.3d 962, 971 (10th Cir. 2007); Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1212 (10th Cir. 2000); Norton v. Village of Corrales, 103 F.3d 928, 933 (10th Cir. 1996); Gunkel v. City of Emporia, 835 F.2d 1302, 1305 (10th Cir. 1987).

IV. DEFENDANT'S ARGUMENTS FOR SUMMARY JUDGMENT

Defendant makes three arguments for summary judgment. First, defendant contends that plaintiff should be barred from proceeding with his claims on the basis of res judicata. Second, defendant contends that this court should not proceed with this case on the basis of the Rooker-Feldman doctrine. Finally, defendant contends that summary judgment is warranted because plaintiff cannot prove the claims alleged in his petition. Defendant contends that plaintiff cannot demonstrate that the City's decisions were unreasonable.

V. PLAINTIFF'S RESPONSE TO DEFENDANT'S SUMMARY JUDGMENT MOTION

Plaintiff contends that his 2008 application for permission to operate a salvage yard was a new application which was given separate consideration and, therefore, the res judicata doctrine does not apply. Similarly, plaintiff argues that the Rooker-Feldman doctrine does not apply because there has been no underlying state court decision regarding plaintiff's 2008 application. Finally, as to the substance of plaintiff's claims, plaintiff argues that the reasons for denying plaintiff's application "fly in the face of the city's action with regard to other salvage type operations and facilities adjacent to plaintiff's property." Doc. No. 35 at p. 14. Plaintiff also contends that plaintiff was entitled to the issuance of a salvage yard permit "upon the fire chief conducting an inspection and approving the proposed location." Id.

VI. RES JUDICATA

Res judicata includes both claim preclusion and issue preclusion. Zhu v. St. Francis Health Center, 413 F.Supp.2d 1232, 1239 (D.Kan. 2006). The Tenth Circuit has applied the state law where the state judgment was entered to determine the application of res judicata. Hatch v. Boulder Town Council, 471 F.3d 1142, 1146 (10th Cir. 2006) (a § 1983 action with somewhat similar claims). Defendant has the burden of proving the facts sufficient to satisfy the elements of res judicata. Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) cert.

denied, 523 U.S. 1064 (1998).

Under Kansas law, res judicata which leads to claim preclusion has four elements: identity of things sued for; identity of cause of action; identity of persons and parties to the actions; and identity in quality of persons. Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 360 (10th Cir. 1996). The main issue in this case is whether there is an identity of cause of action since plaintiff bases this case upon the denial of his 2008 application for permission to operate a salvage yard.

It has been suggested that Kansas would follow the "transactional approach" for determining whether two lawsuits constitute the same claim or cause of action because that is the approach advocated in the Restatement (Second) of Judgments and American Jurisprudence 2d. Northern Natural Gas Company v. L.D. Drilling, Inc., 2009 WL 3739735 at *8 (D.Kan. 11/6/2009). Under this approach:

> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations of business understanding or usage.

Id., (quoting Restatement (Second) of Judgments § 24 (1982)).

Changes in circumstances may permit a second action to proceed.

Material operative facts occurring after the decision of

8

an action with respect to the same subject matter may in themselves or taken in conjunction with the antecedent facts comprise a transaction which may be made the basis of a second action not precluded by the first.

Restatement (Second) of Judgments § 24, comment f (1982).

The record is not extensive in this case. Therefore, it is difficult to determine what material operative facts may have changed between the state courts' decisions in 2005 and 2006 and the date when plaintiff filed this lawsuit. However, it is possible that there were changes in the neighborhood or changes affecting the property upon which plaintiff sought to operate a salvage yard. It is also possible that there were changes in how the City considered allegedly comparable applications. Because defendant has the burden of proof and defendant has not demonstrated an absence of changed material facts, the court will find that this action is not barred by the claim preclusion aspects of res judicata.

Issue preclusion under res judicata prevents relitigation of an issue by a party against whom the issue has been conclusively determined in a prior action. American Home Assurance Co. v. Pacific Indemnity Co., Inc., 672 F.Supp. 495, 496 (D.Kan. 1987). There are four elements under Kansas law to issue preclusion, which is also known as collateral estoppel:

> (1) the issue decided in the prior action is identical to the one presented in the later lawsuit, (2) a final judgment on the merits was rendered in the earlier action, (3) the party against whom collateral estoppel is asserted was a party to the prior action, and (4)

9

>     collateral estoppel is asserted defensively, as a shield
>     to liability against a plaintiff bringing suit on an
>     issue he previously litigated and lost as a plaintiff in
>     a prior action.

Id. (citing Crutsinger v. Hess, 408 F.Supp. 548, 554 (D.Kan. 1976)).

In this case, defendant has established that plaintiff is relitigating the issue of whether the City Council had discretionary authority to deny plaintiff's application or whether approval was required once plaintiff received clearance from the city fire department.  The court finds that plaintiff is barred from relitigating this issue which was decided against plaintiff's position by the Kansas Court of Appeals in 2005.

VII.  ROOKER-FELDMAN

"The Rooker-Feldman doctrine prohibits a lower federal court both from considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." Tal v. Hogan, 453 F.3d 1244, 1256 (10th Cir. 2006) cert. denied, 549 U.S. 1209 (2007) (interior quotation omitted).  "A claim is inextricably intertwined if the state-court judgment caused, actually and proximately, the injury for which the federal court plaintiff seeks redress."  Id. (interior quotation omitted).  The Rooker-Feldman doctrine does not apply here because plaintiff's claims relate to his 2008 application which has never been the subject of state court litigation.

VIII.  DUE PROCESS

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" Nichols, 506 F.3d at 969 (quoting U.S. Const. Amend. XIV, § 1). "Under the Due Process Clause, '[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision.'" Id. (quoting Hyde Park Co., 226 F.3d at 1210).

Here, plaintiff claims the denial of a property interest. He is required to establish the existence of such an interest to prevail upon his due process claims. Id. "[T]he Supreme Court [has] defined the property interests protected by the Due Process Clause:

> 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"

Nichols, 506 F.3d at 969-70 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). "In the municipal land use context . . . the entitlement analysis presents a question of law and focuses on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." Nichols, 506 F.3d at 970 (interior quotations omitted).

> A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, required a particular outcome. On the other hand, whether the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue, no property interest is implicated.

Id. (interior citations and quotations omitted).

Plaintiff has argued that the procedures within the city code mandate the approval of the provisional use permit for his proposed salvage yard. However, as noted earlier in this decision, plaintiff's argument was rejected by the Kansas Court of Appeals in one of plaintiff's prior lawsuits. Because of the doctrine of res judicata, this court will not interfere with that decision. Therefore, the court finds that plaintiff cannot establish a property interest which is protected by the Due Process Clause of the Constitution. In addition, as regards the claim that defendant violated plaintiff's right to procedural due process, the record does not disclose any facts to support a claim that unfair procedures were used by the city government; plaintiff only alleges that the result was unfair.

IX. EQUAL PROTECTION

The Equal Protection Clause of the Fourteenth Amendment provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV. "A violation of equal protection occurs when the government treats someone differently than another who is similarly situated." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1118 (10th Cir. 1991). In this instance, where no suspect classification is alleged and no fundamental right is claimed to be abridged, the difference in treatment need only have a reasonable basis to survive a constitutional challenge. Id. at 1119.

Plaintiff's equal protection claim is called a "class-of-one" equal protection claim since he is not alleging discrimination on the basis of a class marker such as race, ethnicity or gender. The Tenth Circuit has cautioned against a broad approach in sustaining a "class-of-one" equal protection claim:

> [A too broad approach] could transform the federal courts into "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system." Such a pervasive threat of federal litigation could straightjacket local governments that have neither the capacity to document the reasoning behind every decision nor the means to withstand an onslaught of lawsuits.

Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1209 (10th Cir. 2006) (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th Cir. 2004)).

13

There are two elements to a class-of-one equal protection claim: 1) plaintiff must establish that plaintiff was intentionally treated differently from those who are similarly situated; and 2) plaintiff must show that the official action was objectively irrational and abusive. Highland Development, Inc. v. Duchesne County, 505 F.Supp.2d 1129, 1150 (D.Utah 2007). "The requirement that a plaintiff show that similarly situated persons were treated differently 'is especially important in class-of-one cases.'" Jicarilla Apache Nation, 440 F.3d at 1212 (quoting Jennings, 383 F.3d at 1213). Plaintiffs must demonstrate similarity in all material respects. Id.; Lindquist v. City of Pasadena, 656 F.Supp.2d 662, 687-8 (S.D.Tex 2009) ("applications and documentation must be extremely similar"); see also, Franklin v. City of Merriam, 2008 WL 1884189 at *5 (D.Kan. 4/25/2008) (finding no similarity upon summary judgment, although both applications for change of land use sought to put a car dealership on an area where a restaurant once existed).

Plaintiff's response to the summary judgment motion does not argue with any detail or specificity how plaintiff could demonstrate that plaintiff was treated differently from persons who were similarly situated in all material respects. The court has reviewed the materials presented by both sides. It does not appear possible that plaintiff could establish that he was treated differently from other persons or entities whose situations were

14

identical in all material respects and that the difference in treatment was objectively irrational and abusive. The record contains references to licensed or unlicensed salvage yards and to "recycling centers" in the Monroe neighborhood and elsewhere. However, the record also indicates that the city code does not require defendant to treat "recycling centers" the same way as salvage yards and that the recycling center near plaintiff's location does not involve the same materials that plaintiff proposed to salvage. The court is convinced that the record does not reveal an example of another person or entity who was granted a license to operate a markedly similar salvage yard in the neighborhood in question, or one with similar characteristics, near or around the time that plaintiff's application was denied.[1] Locations where unlicensed salvage yard activity is conducted are not similar because the city has not acted to approve the activity.

In addition, the record does not demonstrate a possibility that plaintiff could prove that the denial of plaintiff's application was objectively irrational and abusive. This provides further grounds for granting summary judgment against plaintiff's due process claim.

---

[1] "In the land-use context . . . the most reliable comparisons are likely to be from roughly the same time frame." Cordi-Allen v. Conlon, 494 F.3d 245, 253 (1st Cir. 2007); see also, Rondigo, LLC v. Casco Township, 330 Fed.Appx. 511, 520 (6th Cir. 2009)(finding a relevant difference between an entity trying to start a composting operation and an entity which had been conducting a composting business over the course of several years).

15

X.  CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**

Dated this 18th day of February, 2011 at Topeka, Kansas.

> S/Richard D. Rogers
> United States District Judge